UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHARON EDWARDS ,

                Plaintiff,

v.

ROCHESTER INSTITUTE OF TECHNOLOGY,
& DR. DONALD  BOYD,

              Defendants.

**FIRST AMENDED COMPLAINT**

Civ. No.: 10-CV-6553

## JURY TRIAL DEMANDED

Plaintiff demands a jury to try all claims triable by a jury.

## PRELIMINARY INTRODUCTION

1.       This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.§§ 2000 et seq., as amended, as well as 42 U.S.C. § 1981, and the New York State Human Rights Law, Executive Law § 290 et seq.

## JURISDICTION AND VENUE

2.       Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 2000 (e), 29 U.S.C. § 1331, 42 U.S.C. § 1981; the Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiff's claims under state law.

3.       Venue is proper pursuant to 28 U.S.C. §1391.

1

## ADMINISTRATIVE EXHAUSTION

4.          Plaintiff filed three charges of discrimination with the Equal Employment
Opportunity Commission ("EEOC") on August 10TH, 2009, October 22ND
2009, and December 12TH, 2009.

5.          Plaintiff received a Notice of Right to Sue on June 28TH , 2010.
Plaintiff has timely exhausted all of her claims of discrimination herein and
has filed her complaint with the District Court for the Western District of
New York within 90 days of her receipt of her Notice of Right to Sue.

## PARTIES

6.          Plaintiff is an individual women who was at all times relevant herein a
employee of the Defendant ROCHESTER INSTITUTE OF
TECHNOLOGY, and a resident of the County of Monroe, State of New
York.

7.          Upon information and belief, the Defendant ROCHESTER INSTITUTE OF
TECHNOLOGY, ("RIT" or "defendant")  is a business corporation
organized and existing under the laws of the State of New York.

8.          Upon Information and belief, the Defendant Dr. Donald Boyd, Vice
President of Research, was for all relevant times herein a direct
supervisor of the Plaintiff and aided and abetted in the discriminatory
conduct directed at Plaintiff as alleged herein.

2

**FACTS**

*I. Background*

9.          Plaintiff is an African-American female.

10.          Plaintiff has been employed by the defendant since May, 2003 as "Operations Coordinator;" during Plaintiff's tenure, she is a member of the African American, Latin American, Native American population commonly known on the RIT campus as "AALANA."

11.          Plaintiff was the only RIT onsite presence in the building, the "Incubator Building" until 2006.

12.          Plaintiff was hired to work independently, unsupervised, and manage the off-site facility and support the clients in the Incubator Building.

13.          All of the operational processes and procedures to manage the clients were handled by the Plaintiff.

14.          When Plaintiff was hired, she was told "the sky is the limit for growth opportunities."

15.          On October 4, 2006, Plaintiff received a letter indicating that her title would be changed to "Operations Manager."

16.    However, that title change would never be executed until March 10, 2009, following Plaintiff's meeting with Dr. Destler, President of RIT.

17.    Dr. Donald Boyd,  Senior Vice-President for Research, stated "he forgot."

18.    During Plaintiff's tenure, her performance appraisals never documented poor performance, nor areas needing improvement.

19.    In fact, Plaintiff received the highest performance ratings, historically, "5" out of "5", to be specific.

20.    Nonetheless, Plaintiff was never promoted since 2003, the date of her hire.

21.    Plaintiff was treated disparately, while Caucasian co-workers were routinely promoted into Management and Controller and higher positions.

22.    For example, Jare Alloco Allen (Caucasian) started about the same time as Plaintiff.

23.    While Plaintiff has been reclassified as an hourly worker in a clerical position,  Jare Alloco Allen is now a Director and Controller of Investment Accounting and Debt Management.

24.    Another Caucasian female, Lyn Kelly, was promoted to "Controller" and Assistant Treasurer, wherein Plaintiff was held back.   As a side bar, Kelly had previously recommended that Plaintiff be "let go" on or about September 14th, 2006.

25.    Plaintiff expressed on numerous occasions her desire and ability to be promoted, only to be demoted.

26.    Plaintiff brought her  concerns of disparate treatment to management's attention for well over 5 years, in particular, to Dr. James Watters, Vice President of Finance and Administration, Patty Spinelli, Assistant Vice President to Human Resources, Lee Twyman, Ombudsperson, Dr. William Destler, President of RIT, and Dr. Stan McKenzie, the Provost at that time.

27.    More recently, Dr. Alfreda Brown, Interim Chief Diversity Officer, ("Brown"), sent an email on or about February 18, 2009 to the President of RIT addressing Plaintiff's concerns.

28.    Brown also followed up with a meeting with Dr. Destler.

29.    Plaintiff sent a letter to Dr. Destler wherein she complained of disparate treatment relative to the failure of RIT to promote Plaintiff.

5

30.     Plaintiff explained that she had six years seniority, a Bachelors in Business and Accounting (1996), a Masters in Management (in 2003), and that currently, she was starting her third year of Doctoral studies in Education and Curriculum Instruction.

31.     In March of 2008, Senior Vice President Boyd replied:

*"based on [Plaintiff's] current doctoral studies, there was nothing for [her] at RIT, that RIT has nothing in Education/Curriculum Instruction."*

Further, one month later in April of 2008, Boyd informed Plaintiff :

*"it would be difficult to find a qualified professional AALANA female" for his division"* despite Plaintiff's qualifications.

32.     In a letter dated February 20, 2009, Plaintiff pointed out these concerns in good faith to Dr. Destler, President of RIT.

33.     In a subsequent meeting on February 23, 2009,  with Dr. Destler, Plaintiff was asked "what [she] wanted to do at RIT."

34.     Before Plaintiff  could respond, Dr. Destler said "well, you don't want to work for Don [Boyd], is that correct?"

35.     Dr. Destler was very concerned with the fact that Plaintiff had been employed at the Incubator for six years and was still in the same position.

36.          Dr. Destler stated that he "had to do what was in the best interest of the
             institute."

37.          Plaintiff received no response from Dr. Destler regarding the issues
             Plaintiff brought up in the meeting on February 23, 2009.

38.          No investigation was commenced, and hence no remedial action was
             taken on her behalf.

39.          Plaintiff contacted Dr. Destler again on Friday, May 15, 2009.

40.          Dr. Destler wrote back:  "I asked Karen Barrows, as Chief of Staff, to look
             into the issues."

41.          Karen Barrows did  write back to Plaintiff, however, she only stated that
             she was "requested to take care of the Operations Manager title" and
             investigated no further into any other "issues" Plaintiff had raised with Dr.
             Destler.

42.          Plaintiff then wrote Karen Barrows asking about the other *issues*
             discussed in her meeting with Dr. Destler.

7

43.    Karen Barrows replied "I checked with Bill (Dr. Destler) and he is unsure how he was misunderstood."

44.    At the same time, Plaintiff learned that her title was changed to "Operations Manager," at the same wage rate, with no additional responsibilities, and that she was to continue to perform what RIT describes as clerical duties, even to this day.

45.    Having duly complained to management as per RIT's well established policies, and there being no remedial action taken with regard to her good faith complaints of discrimination in the workplace, Plaintiff had no choice but to file a formal charge of discrimination with the EEOC.

## II. Plaintiff's August 10, 2009 Charge of Discrimination

46.    Plaintiff filed a charge of discrimination with the EEOC on August 10, 2009.

47.    In that charge, she stated, *inter alia*, that she felt she was being subject to discrimination on the basis of race and sex.

### III. Plaintiff is Subject to Retaliation as a Result of her August 10, 2009 Charge

48.     Thereafter, Plaintiff had a good faith basis to believe she was subject to retaliation for having filed a charge of discrimination with the EEOC on August 10, 2009 for the following reasons.

49.     Starting in September and October, 2009, and continuing thereafter, Plaintiff's work assignments were distributed to male co-worker Jerry Mahone, causing a diminution of Plaintiff's job responsibilities which would dissuade a reasonable person from making further complaints in the workplace. This has been an ongoing patter of discrimination and retaliation since 2004.

50.     Thereafter, on October 20, 2009, Plaintiff was informed by her immediate supervisor Executive Director Jerry Mahone that, pursuant to his meeting with Don Boyd on October 20, 2009, Plaintiff "does not have enough to do," despite having deliberately reduced her workload.

51.     Supervisor Mahone informed Plaintiff, that according to Senior Vice President Boyd, *for the first time ever* she must now "track" what she does for the next week, i.e. that she needed to "log" all work tasks she was working on, with start and stop times, and that he would then report back to Boyd.

9

52.     No other similarly situated co-worker of the Plaintiff was mandated to do
        the same.

53.     The above stated actions would dissuade a reasonable person from
        making complaints in the workplace if they knew that as a result of doing
        so they would be subject to the conduct referenced above.

## IV.    Plaintiff's October 22nd, 2009 Charge of Discrimination

54.     In good faith, having felt she was subject to retaliation for having filed a
        charge of discrimination with the EEOC on August 10, 2009, Plaintiff filed
        another EEOC charge on October 22, 2009 alleging retaliation for having
        filed her August 10, 2009 EEOC charge.

55.     Even after filing that charge, matters did not improve for Plaintiff.

56.     On November 12, 2009, Supervisor Mahone informed Plaintiff there would
        be a staff meeting on November 16, 2009 along with Anita Rohr and Don
        Boyd.

57.     Plaintiff asked for an agenda from both Senior Vice President Boy and
        Mahone, but one was never provided.

58.     On Monday, November 16, 2009, there was no staff meeting at all.

59.     Plaintiff had a meeting with Supervisor Mahone, Don Boyd and Human Resource Representative Tammy Gouger instead.

60.     During that meeting, Plaintiff was accused, for the first time ever, of the following:

        (1). Plaintiff's "attitude is unprofessional and it's hindering the customers at Venture Creations";

        (2). that Plaintiff "doesn't get along with the people on campus";

        (3). that Plaintiff "was not recording her time in Kronos properly"; and,

        (4). that Plaintiff "started rumors about [Supervisor Mahone] viewing inappropriate material on his P.C."

61.     Each and every aforementioned allegation regarding Plaintiff made at the November 16, 2009 was false and retaliatory and would dissuade any reasonable employee such as the Plaintiff from making good faith complaints of discrimination in the workplace.

62.     On Tuesday, November 17, 2009, Plaintiff conducted a Customer Satisfaction Survey for herself with Venture Creations.

11

63.    Each customer survey resulted in "excellent" feedback about Plaintiff's work ethic, her attitude, her professionalism and friendliness, in sharp contrast to the allegations levied against her at the November 16, 2009 meeting.

64.    Shortly thereafter, Plaintiff filed a third EEOC charge wherein she stated her good faith belief that she was being retaliated against for engaging in protected activity as set forth herein.

65.    Mahone was terminated effective June 30, 2010.

66.    Mahone's position prior to termination, "Executive Director," was never posted.

67.    Plaintiff was qualified for the position of "Executive Director" but was never given an opportunity to apply for this position as a result of it not being posted following the filing of her charges of discrimination with the EEOC.

68.    Instead, the position of "Interim Director" was given to a male Caucasian co-worker and friend of Don Boyd,  who is less qualified than Plaintiff for that position.

69.    Plaintiff remains in her clerical position to this day and no further action
has been taken on her behalf, in spite of the myriad of good faith
complaints she has made, both to RIT management and to the EEOC.


**FIRST CASE OF ACTION**

**CLAIMS UNDER *42 U.S.C. § 1981***
**As and against the Defendants**
**RIT & SENIOR VICE PRESIDENT, DONALD L. BOYD**

70.    Plaintiff repeats and re-alleges by reference each and every allegations
contained in paragraphs stated above and incorporates the same as
though fully set forth herein.


71.    In engaging in the conduct described above, defendant deprived Plaintiff,
an African American female, of her civil rights pursuant to 42 U.S.C.
§1981, in particular, the racial discrimination and disparate treatment
suffered by Plaintiff violated the  the law.


72.    The disparate treatment  suffered by the Plaintiff on account of her race
was egregious and shocking to the conscience.   As a direct result,
plaintiff was caused to undergo the humiliation and indignities from the
racially discrimination she suffered, and was caused and will continue to
undergo and endure severe mental anguish, humiliation and economic
hardship as a consequence thereof.

73.     As a result of the defendant's deprivations of Plaintiff's civil rights, Plaintiff
has been damaged in an amount to be determined by a jury at the time of
trial.

74.     That Plaintiff demands costs and attorney fees pursuant to <u>42 U.S.C. §
1988</u>.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION IN EMPLOYMENT UNDER TITLE VII**
**As and against the**
**Defendant RIT *Only***

75.     Plaintiff repeats and re-alleges by reference each and every allegation
contained in the above stated paragraphs and incorporates the same as
though fully set forth herein.

76.     Defendants, through its agents, engaged in a continuing pattern of
unremedied race discrimination by subjecting Plaintiff to disparate
treatment on the basis of race and sex in violation of Title VII of the Civil
Rights Act of 1964, as amended.

77.     Defendant at all times relevant herein had actual and constructive
knowledge of the conduct described herein.

78.     As a result of the discrimination maintained by defendants, and each of
them, and their failure to protect the Plaintiff from such treatment, the
Plaintiff suffers from severe emotional distress.

14

79.    Defendants violated Title VII of the Civil Rights Act of 1964, as amended, by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of the defendants as described above.

80.    Defendant failed to comply with their duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

81.    As a direct and proximate result of the defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional distress; she has incurred and will continue to incur medical expenses for treatment by health care professionals, and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

82.    As a further and proximate result of defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff.   Plaintiff further requests that attorney fees be awarded.

15

83.       Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of defendant described above was done with fraud, oppression and malice, with a conscious disregard for her rights, and with the intent, design, and purpose of injuring her.   Plaintiff is further informed and believes that defendant authorized, condoned and/or ratified the unlawful conduct alleged herein, specifically.  By reason thereof, Plaintiff is entitled to exemplary damages from all defendants in a sum to be adduced at trial.

## THIRD CAUSE OF ACTION
## CLAIMS UNDER THE  NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW § 290, et seq.
## As and against the
## Defendant RIT *Only*

84.       Plaintiff repeats and re-alleges by reference each and every allegations contained in the above stated  paragraphs and incorporates the same as though fully set forth herein.

85.       Defendants, through its agent, engaged in a continuing pattern of unremedied race  discrimination by subjecting Plaintiff to disparate treatment based  on race in violation of The New York State Human Rights Law, ("NYSHRL") Executive § 290, *et seq*.  This claim does not raise a novel or complex issue of law.

86.       Defendant at all times relevant herein had actual and constructive knowledge of the conduct described herein.

16

87.	As a result of the disparate treatment based on race that resulted in Plaintiff's failure to be promoted from her clerical position,  the Plaintiff suffers from severe emotional distress.

88.	Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of defendant described above was done with fraud, oppression and malice, with a conscious disregard for her rights, and with the intent, design, and purpose of injuring her.   Plaintiff is further informed and believes that defendant authorized, condoned and/or ratified the unlawful conduct alleged herein, specifically.  By reason thereof, Plaintiff is entitled to exemplary damages from all defendants in a sum to be adduced at trial.

89.	Defendant failed to comply with their duty to take all reasonable and necessary steps to eliminate  harassment from the workplace and to prevent it from occurring in the future.

90.	As a direct and proximate result of the defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

17

**FOURTH CAUSE OF ACTION**
**Retaliation under 42 U.S.C. § 1981 as and against the Defendants**
**RIT & VICE PRESIDENT OF RESEARCH DONALD L. BOYD**

91.    Plaintiff repeats and re-alleges by reference each and every allegation

contained in the above stated paragraphs, and incorporates the same as

though fully set forth herein.


92.    Plaintiff in good faith complained to management of race discrimination,

encompassing ancestry and/or ethnic characteristics by defendant to

defendants directly.


93.    Historically, Plaintiff brought her  concerns of disparate treatment to

management's attention for well over 5 years, to no avail.  Dr. Alfreda

Brown, Interim Chief Diversity Officer, sent an email on or about February

18, 2009 to the President addressing Plaintiff's concerns.  Brown also

followed up with a meeting with Dr. Destler, President of RIT.  Plaintiff

sent a letter to Dr. Destler wherein she complained of disparate treatment

relative to the failure of RIT to promote Plaintiff.  Plaintiff explained that

she had six years seniority, a Bachelors in Business and Accounting

(1996), a Masters in Management (in 2003), and that currently, she was

starting her third year of Doctoral studies in Education and Curriculum

Instruction.   No action was taken by RIT and Plaintiff was compelled to go to the EEOC on three distinct occasions: August 10th, 2009; October 22nd, 2009; and December 12th, 2009, all in which she expressed her good faith basis to believe she was being subject to discrimination on the basis of race and that she was being retaliated against for having made those complaints.

94.    That by formally protesting the conditions of her work place with management and supervisory personnel, and by filing her charge of discrimination  Plaintiff engaged in protected activity under 42 U.S.C. § 1981.

95.    Thereafter, Plaintiff was subject to adverse actions as stated above that were materially adverse and that would dissuade a reasonable employee such as the Plaintiff from making further complaints of discrimination both in the workplace and to the EEOC.

96.    That there was a causal connection between Plaintiff's engagement in protected activity and the retaliatory treatment she suffered.

97.      Defendants, and each of them, engaged in a pattern of illegal retaliation because Plaintiff had complained of race discrimination, which encompasses ancestry and/or ethnic characteristics.   Defendant had no legitimate business reason for these actions.

98.      As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; she has incurred and will continue to incur medical expenses for treatment by health care professionals, and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

99.      As a further and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and each of them, and  has hereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff.  Plaintiff requests that attorney fees be awarded.

100.    Defendants conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiffs rights. The acts were performed with the knowledge of defendants' economic power over Plaintiff. Defendant ratified the unlawful conduct of its employees in this action. Consequently, Plaintiff is entitled to punitive or exemplary damages from all named defendants.

## FIFTH CAUSE OF ACTION

### Retaliation Under TITLE VII
### As and against Defendant RIT *Only*

101.    Plaintiff repeats and re-alleges by reference each and every allegations contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

102.    Plaintiff engaged in protected activity when she in good faith informed her employer that she was subject to discrimination based on race encompassing ancestry and/or ethnic characteristics by defendant to defendants directly.

103.    Historically, Plaintiff brought her concerns of disparate treatment to management's attention for well over 5 years, to no avail. Dr. Alfreda Brown, Interim Chief Diversity Officer, sent an email on or about February 18, 2009 to the President addressing Plaintiff's concerns. Brown also followed up with a meeting with Dr. Destler, President of RIT.

Plaintiff sent a letter to Dr. Destler wherein she complained of disparate treatment relative to the failure of RIT to promote Plaintiff.  Plaintiff explained that she had six years seniority, a Bachelors in Business and Accounting (1996), a Masters in Management (in 2003), and that currently, she was starting her third year of Doctoral studies in Education and Curriculum Instruction.   No action was taken by RIT and Plaintiff was compelled to go to the EEOC on three distinct occasions: August 10th, 2009; October 22nd, 2009; and December 12th, 2009, all in which she expressed her good faith basis to believe she was being subject to discrimination on the basis of race and that she was being retaliated against for having made those complaints.

104.    That by formally protesting the conditions of her work place with management and supervisory personnel, and by filing her charge of discrimination on the basis of race and sex,   Plaintiff engaged in protected activity under 42 U.S.C. § 2000 (e).

105.    Thereafter, Plaintiff was subject to adverse actions as stated above that were materially adverse and that would dissuade a reasonable employee such as the Plaintiff from making further complaints of discrimination both in the workplace and to the EEOC.

22

106.     As a direct and proximate result of defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer severe mental and emotional anguish, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at the time of trial.

107.     As a further and proximate result of the defendant's violations of Title VII, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff.   Accordingly, Plaintiff requests that attorney fees be awarded.

108.     Defendants conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights.   The acts were performed with the knowledge of an employers' economic power over its employees.  Defendant ratified the unlawful conduct of its employees in this action.  Consequently, Plaintiff is entitled to exemplary damages.

## SIXTH CAUSE OF ACTION

**Retaliation under the NYSHRL, EXECUTIVE LAW § 290, et seq., as and against Defendant RIT *Only***

109.    Plaintiff repeats and re-alleges by reference each and every allegations contained in the above captioned paragraphs and incorporates the same as though fully set forth herein.

110.    Plaintiff engaged in protected activity when she in good faith informed her employer that she was subject to discrimination based on race encompassing ancestry and/or ethnic characteristics by defendant to defendants directly.

111.    Historically, Plaintiff brought her concerns of disparate treatment to management's attention for well over 5 years, to no avail. Dr. Alfreda Brown, Interim Chief Diversity Officer, sent an email on or about February 18, 2009 to the President addressing Plaintiff's concerns. Brown also followed up with a meeting with Dr. Destler, President of RIT. Plaintiff sent a letter to Dr. Destler wherein she complained of disparate treatment relative to the failure of RIT to promote Plaintiff. Plaintiff explained that she had six years seniority, a Bachelors in Business and Accounting (1996), a Masters in Management (in 2003), and that currently, she was starting her third year of Doctoral studies in Education and Curriculum Instruction. No action was taken by RIT and Plaintiff was compelled to go to the EEOC on three distinct occasions: August 10th, 2009; October 22nd, 2009; and December 12th, 2009, all in which she expressed her good faith basis to believe she was being subject to

discrimination on the basis of race and that she was being retaliated against for having made those complaints.

112.    That by formally protesting the conditions of her work place with management and supervisory personnel, and by filing her charge of discrimination  Plaintiff engaged in protected activity under the New York State Human Rights Law, § 290 *et seq.*.

113.    Thereafter, Plaintiff was subject to adverse actions as stated above that were materially adverse and that would dissuade a reasonable employee such as the Plaintiff from making further complaints of discrimination both in the workplace and to the EEOC.

114.    As a direct and proximate result of defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer severe mental and emotional  anguish, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at the time of trial.

**WHEREFORE**, Plaintiff demands judgment in her favor on all of the above stated causes of action.

Dated:  October _8_ , 2010
　　　　Rochester, New York

By:　*CHRISTINA A. AGOLA, PLLC*

　　　/s/Christina A. Agola , Esq.
　　　Christina A. Agola
　　　Attorney for Plaintiff
　　　SHARON EDWARDS
　　　2100 First Federal Plaza
　　　28 East Main Street
　　　Rochester, New York 14614
　　　585.262.3320
　　　cagola@wnycivilrights.com